UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS L. DAVIDSON,<br><br>    Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security<br><br>    Defendant. | Case No.: C 05-01428 NJV<br><br>**ORDER GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF AND REMANDING FOR ADDITIONAL PROCEEDINGS** |

### I.   INTRODUCTION

This is an appeal of the Administrative Law Judge's (ALJ) denial of Social Security benefits. Plaintiff Thomas Davidson (Plaintiff) filed a claim for Social Security Disability benefits under Title II and Title XIII of the Social Security Act on August 30, 2001, alleging inability to work since March 12, 1999. (R. at 164-166.) The Social Security Administration (SSA) denied Plaintiff's claim initially on January 11, 2001 and upon reconsideration on September 18, 2002. (R. at 131, 137.)

Plaintiff appeared with counsel at a hearing held before ALJ Catherine Lazuran on February 6, 2003. (R. at 28.) The ALJ decided Plaintiff was severely impaired but not disabled within the meaning of the Social Security Act. (R. at 28-29). This became the Commissioner of Social Security's final decision upon the SSA Appeals Council's denial of Plaintiff's request for review on February 4, 2005. (R. at 6.)

Plaintiff filed a motion for summary judgment on August 18, 2005. Defendant filed a cross-motion for summary judgment September 19, 2005. Plaintiff filed a reply on September 25, 2005. Plaintiff raised four issues for review. Plaintiff alleges the ALJ erred by failing to consider third party reports from Plaintiff's wife, wrongfully rejecting his treating physician's opinion, and interfering with Plaintiff's right to a full and fair hearing. Plaintiff also challenges whether the vocational expert's testimony is substantial evidence to support a finding that Plaintiff can return to past work.

## II.   SUMMARY OF EVIDENCE BEFORE ALJ

### A. Testimony at February 6, 2003 Hearing

Plaintiff appeared with counsel at a hearing before the ALJ on February 6, 2003. Vocational expert Malcolm Brodsinski also attended the hearing. The administrative record before the ALJ reveals the following medical and work history.

#### 1. Plaintiff's testimony

At the hearing, Plaintiff testified to the following regarding his employment history: Plaintiff was 56 years old with a high school education. (R. at 30-31.) He also completed two years of college, but received no college degree. (R. at 32.) Plaintiff has welding certificates from Santa Rosa Junior College as part of on-the-job training with the United States Postal Service (USPS). Id.

Plaintiff last worked from October 1996 to either February or March 1999 as a chauffeur. Id. This job required lifting suitcases weighing about 35 pounds. (R. at 34.) Plaintiff worked for about four companies, one after another, as a chauffeur. Id. Plaintiff resigned from his first employer because he did not like who was running the business. (R. at 41.) He also resigned from his second employer. Id. Plaintiff recalled being fired from his third employer for defying

management. (R. at 42.)  Plaintiff stopped working at his fourth job because he could not get a Class B driver's license with the medication he started taking.  (R. at 43.)

Prior to work as a chauffeur, Plaintiff worked for the USPS as a clerk, letter carrier, custodian, building maintenance person, and electrician from 1986 through 1997.  (R. at 45-46.)  Plaintiff lifted about 35 to 40 pounds as a clerk and letter carrier.  (R. at 46.)  Plaintiff lifted about 50 to 70 pounds as a building maintenance person.  (R. at 47.)  Plaintiff was fired in 1995 for sexual harassment and rehired in December 1995.  (R. at 49.)  Plaintiff was fired in October 1996 for screaming that the Supervisors were after him over the P.A. system.  Id.  Plaintiff was awarded disability retirement in March 1999.  (R. at 49-50.)  Plaintiff was still receiving disability retirement at the time of the hearing as well as V.A. benefits.  (R. at 50.)  Plaintiff also worked at Manpower, Inc. doing temporary work in 1997 doing custodial and construction work.  (R. at 92-93.)

At the hearing, Plaintiff also testified to the following regarding his volunteer activities:  Plaintiff has done volunteer work for 21 years with the Boy Scouts as a committee chairperson and camp counselor.  (R. at 55-57.)  Plaintiff was also President of the Lions' Club in 2000 and 2001, working about twenty hours a month. (R. at 57, 60.)  Plaintiff ran cameras at a television station for about four hours a month, for a period of time of six months to a year.  (R. at 60.)

At the hearing, Plaintiff also testified to the following regarding his psychological treatment:  Plaintiff attends group V.A., veteran group, and A.A. and sees Doctors Vedantham, Mack, Karem, and Pennington.  (R. at 62-63, 68.)  Plaintiff takes Valporic Acid, Trazadone when he can't sleep, .  (R. at 68, 73.)

### 2. Vocational Expert Malcolm Brodsinski's testimony

Vocational Expert Malcolm testified to the following: Based on his review of Plaintiff's work history in the last 15 years, the Plaintiff's former jobs include work as a mail carrier, postal service clerk, janitor, maintenance repairer of buildings, maintenance electrician, and van driver. (R. at 98-99.) Plaintiff does not have transferable skills. (R. at 100.) Given the hypothetical of a person of Plaintiff's age, education and past relevant work experience who is able to lift 50 pounds occasionally and 20 pounds frequently and has no limits on standing, walking or sitting, this person would be able to perform all of Plaintiff's past relevant work. (R. at 102.)

The ALJ then added further limitations to this hypothetical person. The hypothetical person is also able to deal well with short, simple instructions, satisfactorily deal with detailed instructions and make simple work related decisions. (R. at 109.) In addition, the hypothetical person has a serious limitation but is not precluded from interacting with supervisors and co-workers (works mostly independently of a supervisor and co-employees) and responding to changes in a routing work setting. (R. at 103, 109.) Also, the hypothetical person should avoid dealing with the public and avoid high pressured work. (R. at 109.) Such a hypothetical person could return to janitorial work because it does not involve much social interaction. (R. at 121.)

### B. Medical Evidence

### 1. Stephen M. Raffle, M.D.

Dr. Raffle reported that Plaintiff has a paranoid personality disorder characterized by pervasive distrust and suspicion of others causing him to become confrontational, argumentative, hostile and intimidating. (R. at 291.) Plaintiff has problems with interpersonal relations, accepting or receiving supervisory instructions, and working with others. (R. at 292.) The ALJ

rejected this opinion because it was based on a one-time evaluation and it contradicted with the opinions of Dr. Myla Young, Dr. Emily A. Karem, and Dr. Kumar Vedantham. (R. at 20.)

### 2.  Myla H. Young, Ph.D.

In December 1998, Dr. Young reported that Plaintiff's response to a neuropsychological test do not suggest signs of an underlying paranoid process. (R. at 299.)  Plaintiff's mild impairment in attention, memory and problem solving would not prevent him from functioning at his workplace. Id.

### 3.  Kumar Vendantham, M.D.

In an undated report, Dr. Vendantham diagnosed the Plaintiff with post traumatic stress disorder (PTSD) and alcohol abuse in stable remission. (R. at 462.)  He opined that Plaintiff was "stable but remains extremely limited in his functioning - minimal social contact, inability to form close relationships." (R. at 464.)  Plaintiff also has a poor ability to understand, remember and carry out complex instructions, perform activities within a schedule, maintain regular attendance, and complete a normal workday or work week without interruption from psychological symptoms. Id.  The ALJ rejected the portion of Dr. Vedantham's opinion that Plaintiff is markedly to extremely limited in social interaction with others because it conflicted with his progress notes regarding Plaintiff's progress and daily activities. (R. at 21.)

In February 2001, Dr. Vedantham opined that Plaintiff confronted family stressors and had not "had any behavioral outbursts in the past six months." (R. at 376.)

### 4.  Robert B. Baron, M.D.

In April 2003, Dr. Baron opined that Plaintiff does not relate appropriately to others but could attend to safety concerns and would be able to do simple and complex tasks in a "low stress job that did not demand more of him cognitively in terms of complexity, or have to deal

with others directing him." (R. at 500.)  Plaintiff no longer has flashbacks and is able to go out in public.  (R. at 499.)

### 5. Veterans Administration

The record includes progress notes from the Veterans Administration by Emily A. Keram, M. D. and Stephen Pennington, Ph.D.  (R. at 343-450.)  Dr. Pennington noted that claimant remained very active with the Boy Scouts of America, AA and a local television studio. (R. at 417.)  In March and June 2000, Plaintiff reported having a sudden outburst of irritability and a blow up during a boy scout trip.  (R. at 397, 405.)  In November 2000, Plaintiff reported doing well and he requested that his medications be decreased.  (R. at 384.)

### 6. Kevin Mack, M.D.

In January 2002, Dr. Mack completed a report regarding Plaintiff's ability to do work-related activities.  (R. at 495-496.)  He opined that Plaintiff was "extremely isolative and has extreme difficulty dealing with interpersonal stressors and authority figures," suffered from an avoidant lifestyle and was easily frustrated and angered by minor stressors.  (R. at 496.)

### 7. Plaintiff's wife, Krista Davidson

Mrs. Davidson submitted Daily Activities Questionnaires.  (R. at 224-229, 250-255.)  In September 2001, she stated that Plaintiff is active in Boy Scouts and Lions Club.  (R. at 226, 227.)  She also stated that he has trouble with authority, has not been able to work at the same job for more than a few months, and cannot compromise on work related rules. (R. at 229.)

In July 2002, she stated that Plaintiff associates with people who are involved in the community.  (R. at 254.)  She also stated that he is paranoid about someone being outside the house or looking into it.  Id.  She also stated that he corrects everyone on the road while driving, and he believes drivers are attacking him personally.  Id.

### III.   STANDARD OF REVIEW

The factual findings of the Commissioner of Social Security shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). The Commissioner's findings may be set aside only if they are based on legal error or are not supported by substantial evidence. Reddick v. Chater, 157 F. 3d 715, 720 (9th Cir. 1998); (citing Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)). Substantial evidence is more than a scintilla but less than preponderance. It is relevant evidence which a reasonable person might accept as adequate to support a conclusion. Reddick, 157 F.3d at 720 [internal citations omitted](citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir 1997)).

The court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the commissioner's conclusion." Magellenes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary. Reddick, 157 F.3d at 720 (citing Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

### IV.   DISCUSSION

#### A. Definition and Determination of Disability

To qualify for disability insurance benefits, Plaintiff must demonstrate that he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. U.S.C. § 423 (d)(1)(A).

The SSA uses a five-step sequential evaluation process to determine whether a claimant is disabled. C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-141 (1987). First, the

SSA determines whether the claimant is engaged in substantial gainful activity. C.F.R. § 404.1520(b). If the claimant is not engaged in substantial gainful activity, the SSA proceeds to step two to determine whether the claimant has a medically severe impairment or combination of impairments. C.F.R. § 404.1520(c). If the claimant has a severe impairment, the SSA proceeds to step three to "determine whether the impairment is equivalent to one of a number of listed impairments (listings) that the Secretary acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; C.F.R. § 404.1520(d). The SSA presumes that a claimant is disabled if his impairment meets one of the listings. Id.

If the claimant's impairment does not meet or equal one of the listings, the SSA proceeds to step four to determine the claimant's residual functional capacity, which is then used to determine whether the claimant's impairment "prevents [him] from performing work [he] has performed in the past." C.F.R. § 404.1520(e). The SSA considers the claimant not disabled if he is able to perform his past work. Id.

If the claimant cannot perform his past work, the SSA proceeds to step five to determine whether the claimant can perform other work in the national economy, considering his age, education, and work experience. C.F.R. § 404.1520(f). If the claimant cannot perform other work, the SSA finds him disabled. C.F.R. § 404.1520(f)(1).

The ALJ decided that Plaintiff was not disabled at any time on or before the date of the decision

### 1. Step 1: Engaged in substantial gainful activity

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, March 12, 1999. (R. at 17, 24.) During the years 2000 and 2001, Plaintiff earned $1,364.88 and $452.40 respectively. (R. at 17, 167-168.) "The monthly

averaged earnings for those years do not constitute substantial gainful activity under 20 C.F.R." 404.1574. (R. at 17.)

### 2. Step 2: Medically severe impairment or combination of impairments

The ALJ found that Plaintiff had "severe" medically determinable impairments consisting of PTSD, a history of alcoholism, in remission, chronic obstructive pulmonary disease and bilateral sensorineural hearing loss, based on the requirements in the regulations 20 C.F.R. § 404.1520(b) and Social Security Ruling 85-28. (R. at 17, 24.)

### 3. Step 3: Listed Impairments

The ALJ found that these "severe" medically determinable impairments are not attended by clinical and laboratory findings that meet or equal one of the listed impairments founds in Appendix 1 to Subpart P of regulation No. 4. Id.

### 4. Step 4: Residual Functional Capacity

The ALJ found that Plaintiff has the residual functional capacity to occasionally lift up to fifty pounds and frequently lift and carry up to twenty pounds with no limitations on sitting, standing or walking. Plaintiff is able to deal with short simple instructions, satisfactorily deal with detailed instructions, and make simple work related decisions. Plaintiff is seriously limited in, but not precluded from, interacting with supervisors and co-workers and responding to changes in a routine work setting. Plaintiff should avoid dealing with the public and high pressure work. (R. at 17-18, 23-24).

### 5. Step 5: Performance of other work in the national economy.

The ALJ's analysis stopped at step four where she decided Plaintiff retains the residual functional capacity to perform his past relevant work as a janitor. (R. at 25.)

**B. Issues for Review**

Plaintiff challenges the ALJ's finding that Plaintiff is not disabled. In support of Plaintiff's request for the review of ALJ's decision, Plaintiff argues (1) the ALJ failed to consider the entire record, (2) the ALJ interfered with the claimant's right to a full and fair hearing, and (3) the vocational expert's testimony is not substantial evidence to support a finding that Plaintiff can return to past work.

### 1. The ALJ failed to consider the entire record.

The Plaintiff contends that the ALJ failed to consider the entire record by disregarding his wife's two reports, improperly rejecting portions of Dr. Vendantham and Dr. Mack's opinions.

#### a. The ALJ failed to consider third party reports.

When disregarding lay testimony, the ALJ must give reasons that are germane to each witness. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir., 1993). Here, the ALJ's decision fails to mention the Daily Activities Questionnaires submitted by Plaintiff's wife, Krista Davidson. (R. at 190-195, 224-229.) The Commissioner cites Johnson v. Shalala, 60 F.3d 1428, 1436 n.9 (9th Cir., 1995) for the proposition that failure to consider the wife's two reports is harmless error. However, the harmless error analysis in Johnson was in regard to over-inclusion of debilitating factors, leading to a finding that a claimant was able to do a job requiring increased concentration. Id. This necessarily means the claimant was also capable of performing work requiring less concentration. Id. Here, the ALJ's summary of evidence was under-inclusive and failure to consider her testimony is not harmless error.

The ALJ erred in failing to set forth reasons for discounting lay witness testimony and the case is remanded to the ALJ for consideration of the lay witness' testimony.

### b. The ALJ properly set forth specific and legitimate reasons for rejecting portions of Dr. Kumar Vedantham's opinion

While the ALJ relied on Dr. Vedantham's assessment, she did not accord controlling weight to Dr. Vedantham's assessment of claimant's functional capacity. Generally, a treating physician's opinion is given more weight than an examining or a non-examining physician's statement. <u>Magellenes</u>, 881 F.2d at 751. To reject a treating physician's contradicted opinion, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence on the record. <u>Id.</u> The ALJ accomplishes this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof and making findings." <u>Id.</u> at 751, 753, 755.

The ALJ noted that Dr. Vedantham's progress notes "reflect improvement of symptoms and related daily functions that contradicted Dr. Vedantham's opinion that [Plaintiff] is markedly to extremely limited in social interaction with others." (R. at 21.) Plaintiff contends that ALJ's reasons for rejecting the Dr. Vedantham's opinion, because it is not supported by clinical notes or Plaintiff's daily activities, are not legitimate and not supported by substantial evidence on the record.

Specifically, Plaintiff argues that it is a matter of course that the clinical notes reflect Plaintiff is doing well but they do not indicate that he is so improved he can now work. However, this argument must fail because "we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." <u>Andrews v. Shalala</u>, 53 F.3d 1035.

The ALJ's statement that the progress notes of Plaintiff's improvement of symptoms and related daily activities is supported by substantial evidence in the record. The ALJ's summary of

the evidence cites specific progress notes conflicting with Dr. Vedantham's opinion.  In February 2001, Dr. Vedantham recorded that Plaintiff had not had any behavioral outbursts in the past six months. (R. at 376.)  Again in March 2002, Dr. Vedantham noted that Plaintiff had not had any recent behavioral outbursts. (R. at 353.)  Finally, in June 2002 Plaintiff has a backyard barbecue and invited several of his neighbors. (R. at 347.)  These notes conflicted with Dr. Vedantham's opinion that Plaintiff is markedly to extremely limited in social interaction with others.

The ALJ's reason for rejecting part of the Dr. Vedantham's opinion based is specific and legitimate and supported by substantial evidence on the record.  Summary judgment for the Plaintiff is denied on this ground.

### c. The ALJ provided legitimate reasons for rejecting the limited functional capacity proposed by Dr. Mack.

Plaintiff also incorrectly states and argues that the ALJ failed to consider Dr. Mack's opinion.  To the contrary, the ALJ specifically stated that "medical evidence supports Dr. Mack's opinion of significant limitations for social interaction but not to the degree indicated." (R. at 21.)  The ALJ decided that Dr. Mack's findings were not supported by available progress notes or daily activities that reflect improvement.

As discussed above, the ALJ's reasons regarding progress notes and daily activities are legitimate, and supported by substantial evidence on the record.  Summary judgment for the Plaintiff is denied on this ground.

## 2. The ALJ properly discharged her duty to fully and fairly develop the record.

Plaintiff also alleges that he was deprived of his due process right to a full and fair hearing because the ALJ actively interfered with the Plaintiff's representative's questioning at

the hearing. Plaintiff does not cite to constitutional, statutory, or common law authority to support his argument that there has been a deprivation of due process. Rather, he argues that the ALJ's interference prevented Plaintiff's representative from showing that Plaintiff's volunteer activities did not "create the stresses from supervisors he has already shown he could not handle." (PMSJ, 13.) However, Plaintiff fails to show that omission of this testimony was prejudicial. The ALJ's decision acknowledges that Plaintiff's "ability to control his angry outbursts has been in connection with outside and family activities that are not as grueling as work stressors." (R. at 21.) In addition, the hearing lasted for more than two and a half hours. (R. at 123.)

The ALJ's interference with questioning was not prejudicial and she properly discharged her duty to fully and fairly develop the record. Remand is not warranted on this ground.

### 3. The vocational expert's testimony is substantial evidence to support a finding that Plaintiff can return to past work.

Plaintiff also argues that the vocational expert's testimony is not substantial evidence to support a finding that Plaintiff can return to past work. Plaintiff contends that the ALJ failed to include all limitations that are relevant in the hypothetical. Specifically, the ALJ omitted Dr. Coren's limitation that the Plaintiff could work "if he does not have too much contact with supervisors or peers" and "avoid[s] the type of inter[personal] relationships that have proved difficult" for the Plaintiff. (R. at 304.) However, Plaintiff's argument must fail because the ALJ included all limitations that were supported by substantial evidence on the record. In fact, the Plaintiff cited to Exhibit 3F, Dr. Coren's opinion, when questioning the vocational expert and clarifying the hypothetical. (R. at 103.) Plaintiff also fails to discern why omission of Dr. Coren's exact statements requires reversal. We find no distinction between Dr. Coren's

statements and the ALJ's hypothetical as both reflect serious impairments in interactions with supervisors and peers.

Plaintiff also attributes two out of the three complaints that the statements were too vague to the ALJ's hypothetical. There was ambiguity regarding the statement that a hypothetical person would have a serious limitation in, but is not precluded from interacting with a supervisor. (R. at 110.) However, this was sufficiently clarified over the course of the questioning by the ALJ. (R. at 110-111, 115-123.)

V.   **CONCLUSION**

Accordingly is it hereby **ORDERED** that Defendant's Motion of Summary Judgment is **DENIED** in part and Plaintiff's Motion for Summary Judgment is **GRANTED** in part. This case is **REMANDED** to the ALJ for further proceedings in accordance with this order.

Dated: 5/8/06

_____
NANDOR J. VADAS
United States Magistrate Judge
Northern District of California

14